## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **v.** | * | |
| | | **Criminal No.: RDB-08-553** |
| **ANTONIO HOLTON,** | * | |
| **Defendant**. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM ORDER

On August 25, 2010, Defendant Antonio Holton ("Defendant" or "Holton") was found guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 97.)  On December 14, 2020, this Court sentenced Holton to 288 months' imprisonment and a five-year term of supervised released.  (ECF No. 107.)  Now pending is the Defendant's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 152), in which he seeks immediate release from custody.  Holton claims that his immediate release is warranted due to his medical conditions which he alleges place him at an increased risk of severe illness if he were to contract the COVID-19 virus. (ECF No. 152.)  For the reasons that follow, the Defendant's Motion for Compassionate Release (ECF No. 152) is DENIED.

### BACKGROUND

On December 2, 2008, Defendant Holton was charged in a single-count Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)  This charge was the result of an incident on April 9, 2008 involving Detectives Angela Choi and Jared Fried of the Baltimore Police Department.  That day the Detectives heard gun

shots while patrolling the 2900 block of Presbury Street in an unmarked vehicle. (ECF No. 104.) According to the Detectives, they observed an individual, later identified as Holton, running southbound from the 1700 block of Poplar Grove Street toward Presbury Street. (*Id.*) Detective Fried pursued the Defendant on foot, and Detective Choi remained in the vehicle to block access to a nearby alley. (*Id.*) Holton fired his weapon at Detective Fried, but his shot fortunately missed. (*Id.*) Detective Fried returned fire, striking the Defendant. (*Id.*) He fell, dropping a .45 caliber High-Point pistol, Model JHP, bearing serial number X424929. (*Id.*) He was taken to the hospital and treated for his injuries. (*Id.*) A shell casing matching the gun fired by Holton was found in front of 1705 Poplar Grove Street, the area from which the Detectives originally heard a gunshot. (*Id.*) Gunshot residue was also found on both of Holton's hands. (*Id.*)

On August 25, 2010, the Defendant was found guilty of the § 922(g)(1) charge. (ECF No. 97.) As this Court stated on the record at Holton's sentencing on December 14, 2010, the nature and circumstances of the Defendant's offense were very serious. (ECF No. 119 at 45.) The Defendant's history and characteristics also reflected a pattern of recidivism. (*Id.*) He was found guilty of assault in the second degree in 1998 and was then found guilty of possession with intent to distribute a controlled dangerous substance later that same year. (*Id.* at 9.) He spent more than four years in state prison. (*Id.*) Holton was also convicted for robbery with a deadly weapon, as well as handgun on the person. (*Id.* at 10.) And in 2004, he was convicted of possession of a controlled dangerous substance with intent to distribute. (*Id.*) He had a total of twelve criminal history points and was on probation for a state charge when he committed the offense for which he is presently serving. (*Id.*) In fact, it was only

2

two months after his release from prison for that 2004 conviction that he found himself exchanging gunfire with a law enforcement officer.  (*Id.* at 45.)  This Court noted the need to impose a sentence that reflected the seriousness of the offense and promoted respect for the law and found that the mandatory minimum sentence was not appropriate in this case.  (*Id.* at 47.)  In light of all the facts and the Federal Sentencing Guidelines, this Court found that a sentence of 288 months' imprisonment and a five-year term of supervised released was appropriate.  (ECF No. 107.)

In early 2020, the COVID-19 pandemic began to spread throughout the United States. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Mar. 20, 2020).  On August 26, 2020, Holton filed the presently pending *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 152), in which he seeks immediate release from custody due to his medical conditions which he alleges place him at a higher risk of severe illness from the COVID-19 virus.  According to his Motion and as confirmed by medical records submitted to this Court, Holton has cardiovascular disease resulting in hypertension.  (ECF Nos. 152, 152-1.)  Holton is currently housed at USP Allenwood within the Allenwood FCC.  There are no active infections of the COVID-19 virus at that facility at this time.[1]  The Bureau of Prisons ("BOP") estimates that 1483 inmates at Allenwood FCC have received a COVID-19 vaccine.[2]

**ANALYSIS**

---

[1] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).
[2] Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction; that the defendant is no longer a danger to the community; and a finding that a reduction in sentence is consistent with the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

Holton has provided this Court with documentation showing that he has properly exhausted his remedies as required for this Court to consider his pending Motion. (ECF No. 152-1.) On July 29, 2020, his request for relief from the warden of his facility was denied. (*Id.*) Holton's Motion is properly before this Court, and this Court must therefore determine whether extraordinary and compelling reasons warrant a reduction; whether Holton is a danger to the community; and whether a reduction is consistent with the factor set forth in 18 U.S.C. § 3553(a).

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).  Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Additionally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis.  As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020).  Exercising that discretion, this Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction.  *See, e.g.*, *United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

In his Motion, Holton asserts that he is entitled to compassionate release because he has cardiovascular disease resulting in hypertension.  (ECF No. 152.)  He contends that the COVID-19 pandemic is very dangerous to him due to this condition.  (*Id.*)  However, while

the COVID-19 pandemic created an elevated risk for Defendant Holton and others in BOP facilities, the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson), has lowered that risk in recent months.  As Judge Hollander of this Court has noted, the BOP has been receiving vaccine shipments since December 16, 2020. *United States v. Graves*, No. ELH-18-17, 20201 WL 1909631, at *8-9 (D. Md. May 11, 2021) (citing Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f).  Since then, vaccination levels have increased: at Allenwood FCC, where the Defendant is imprisoned, the BOP reported as of June 28, 2021, 419 staff members and 1482 inmates have been inoculated with the vaccine.[3]  Additionally, rates of infection have decreased: there are currently no cases of COVID-19 at Allenwood FCC or within USP Allenwood.[4]

Even if Holton's hypertension and heart disease were sufficient to show extraordinary and compelling reasons for release amidst these falling COVID-19 infection figures and rising inoculation figures, consideration of the sentencing factors under 18 U.S.C. § 3553(a) reveals that he is nevertheless not a suitable candidate for early release. This Court must find extraordinary and compelling circumstances, *as well as* that the defendant would not pose "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), and that a reduction in sentence is consistent with the sentencing factors provided in 18 U.S.C. § 3553(a) in order to grant such motion.

[3] Staff who received their vaccination in the community rather than a BOP facility are not reflected in these figures. Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).
[4] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).

To determine whether a defendant poses a danger to the community, this Court must consider a number of factors, including (1) the nature and circumstances of the offense; (2) the weight of the evidence against him; (3) his history and characteristics; and (4) the nature and seriousness of the danger he would pose to others upon his release. *See* 18 U.S.C. § 3142(g). Analysis under 18 U.S.C. § 3553(a) involves consideration of some of the same factors. Under § 3553(a), the court considers (1) Holton's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See United States v. Bryant*, Crim No. 95-202-CCB-3, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

Looking at each of these factors, this Court finds that a reduction in Holton's sentence is inappropriate. As detailed above, Holton has a significant criminal history. Most notably, he committed the offense for which he is currently imprisoned while on probation for a prior offense—just two months after his release from prison. Additionally, the nature and circumstances of Holton's current criminal case, shooting at a law enforcement officer, are incredibly serious. Overall, the nature of the crime and Holton's history of recidivism warranted the sentence initially imposed. A reduction at this time, when he has served less than half that sentence, would be inconsistent with the deterrent effect of the sentence.

**CONCLUSION**

Accordingly, for the reasons stated above, it is HEREBY ORDERED this 29th Day of June, 2021, that Defendant Holton's Motion for Compassionate Release (ECF No. 152) is DENIED.

_____/s/_____
Richard D. Bennett
United States District Judge