IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-08-0553 |
| ANTONIO HOLTON, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On August 25, 2010, following a three-day trial, a jury found Defendant Antonio Holton ("Defendant" or "Holton") guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 97.) On December 14, 2010, this Court sentenced Holton to 288 months' imprisonment, to be followed by a five-year term of supervised release. (ECF No. 107.) Holton is now 45-years-old and is currently incarcerated at Butner Medium II FCI in Butner, North Carolina, with a projected release date of August 17, 2031. *See Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/# (search by register number 43977-037).

On August 26, 2020, Holton filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("First Motion for Compassionate Release") (ECF No. 152), wherein he sought immediate release from custody on the grounds that he had certain medical conditions which rendered him more susceptible to complications caused by COVID-19. On June 29, 2021, this Court DENIED Holton's First Motion for Compassionate Release. (ECF No. 158.)

1

Presently pending before this Court is Holton's second *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Second Motion for Compassionate Release" or "Second Motion") (ECF No. 160), which was supplemented *pro se* numerous times (ECF Nos. 162; 163; 164; 165; 166). Through his Second Motion, as supplemented, Holton seeks a reduction in his sentence and supervised release period on various grounds that he contends establish extraordinary and compelling reasons justifying his early release. The Government opposed the Second Motion in writing (ECF Nos. 172 *SEALED*; 173; 176 *SEALED*),[1] and Holton replied. (ECF No. 178.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Defendant Antonio Holton's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 160) is DENIED with respect to his request for a time served sentence but is GRANTED as to Holton's request for a sentence reduction. Specifically, Holton's total sentence will be reduced by 48 months; that is, his sentence will be reduced from 288 months to 240 months of incarceration.

## BACKGROUND

This Court has previously summarized the facts of this case on prior occasion. (ECF Nos. 158; 139.) As such, the Court only briefly summarizes the facts underlying Holton's conviction below.

On December 2, 2008, Defendant Holton was charged in a single-count Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), (ECF

---

[1] The Government filed its Opposition twice—once under seal at ECF No. 172, and once in redacted form at ECF No. 173. For clarity, this Memorandum Opinion cites to the redacted version of the Government's Opposition only (ECF No. 173).

2

No. 1), following an incident on April 9, 2008 involving Detectives Angela Choi and Jared Fried of the Baltimore Police Department. (ECF No. 104.) In short, the Detectives heard shots while patrolling in an unmarked vehicle. (*Id.*) According to the Detectives, they observed an individual, later identified as Holton, running away. (*Id.*) Detective Fried pursued Holton on foot, and Detective Choi remained in the vehicle to block access to a nearby alley. (*Id.*) Holton fired his weapon at Detective Fried, but his shot fortunately missed. (*Id.*) Detective Fried returned fire, striking Holton. (*Id.*) Holton fell, dropping a pistol. (*Id.*) He was taken to the hospital and treated for his injuries. (*Id.*) A shell casing matching the gun fired by Holton was found in front of the area from which the Detectives originally heard a gunshot. (*Id.*) Gunshot residue was also found on both of Holton's hands. (*Id.*)

On August 25, 2010, following a three-day trial, a jury found Holton guilty of the § 922(g)(1) charge. (ECF No. 97.) On December 14, 2010, this Court sentenced Holton to 288 months' imprisonment, to be followed by a five-year term of supervised release. (ECF No. 107.) During his sentencing, the Undersigned Judge remarked on the seriousness of Holton's offense of conviction. (ECF No. 119 at 45.) The Court further remarked that Holton's history and characteristics also reflected a pattern of recidivism. (*Id.*) Holton's prior charges were vast, including assault, possession with intent to distribute, robbery with a deadly weapon, and firearm charges. (*Id.* at 9–10.) The Court noted Holton was only released from prison two months prior to committing the offense on April 9, 2008, and was still on probation. (*Id.* at 10, 45.) This Court noted the need to impose a sentence that reflected the seriousness of the offense and promoted respect for the law and found that the mandatory minimum sentence of 15-years was not appropriate in this case. (*Id.* at 47); 18 U.S.C. § 924(e).

3

Accordingly, this Court sentenced Holton to 288 months' imprisonment to be followed by a five-year term of supervised release. (ECF No. 107.)

On August 26, 2020 Holton filed the First Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), wherein he sought immediate release from custody due to his medical conditions that he alleged placed him at a higher risk of severe illness from the COVID-19 virus. (ECF No. 152.) On June 29, 2021, this Court denied Holton's request, noting that "[e]ven if Holton's hypertension and heart disease were sufficient to show extraordinary and compelling reasons for release amidst . . . falling COVID-19 infection figures and rising inoculation figures, consideration of the sentencing factors under 18 U.S.C. § 3553(a) reveal[ed] that he is nevertheless not a suitable candidate for early release." (ECF No. 158 at 6.)

Shortly thereafter, Holton filed the pending *pro se* Second Motion for Compassionate Release (ECF No. 160) and supplements thereto (ECF Nos. 162; 163; 164; 165; 166). Through his Second Motion, Holton seeks a reduction in his sentence and his supervised release period, noting several grounds that he claims are sufficient to show extraordinary and compelling reasons for release. First, Holton cites to disparities in sentencing, both in terms of his current sentence in relation to the sentence he would receive now after a change in law, (ECF No. 160 at 4–5; ECF No. 163 at 1–2; ECF No. 164 at 4; ECF No. 165 at 1), and in terms of his current sentence in relation to the sentences of other defendants, (ECF No. 164 at 1; ECF No. 165 at 2–3; ECF No. 166 at 12–18). Second, Holton reasserts his risk of sustaining COVID-19 complications caused by underlying medical conditions. (ECF No. 160 at 5–6; ECF No. 162 at 3–4.) More generally, Holton supports his request by citing to his post-sentencing

4

rehabilitative efforts, (ECF No. 160 at 7–8; ECF No. 162 at 1; ECF No. 166 at 8–12); the length of his sentence, (ECF No. 166 at 18–20); the amount of time served, (*id.* at 20–21); his age at the time of the offense, (ECF No. 162 at 1; ECF No. 166 at 21–22); and his lack of danger to others, (ECF No. 162 at 1; ECF No. 166 at 23–28).

On October 2, 2023, the Government filed a response in opposition to Holton's request for compassionate release ("Opposition") (ECF No. 173), which the Government supplemented with Holton's medical records (ECF No. 176 *SEALED*). In its Opposition, the Government contends that none of the grounds asserted constitute extraordinary and compelling reasons justifying a sentence reduction and that allowing a reduction in sentence would be inconsistent with the 18 U.S.C. § 3553(a) factors. (ECF No. 173 at 6–44.) On October 12, 2023, Holton replied to the Government's opposition. (ECF No. 178.) Holton's Second Motion for Compassionate Release is ripe for review.

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). As Holton filed the pending Motion and supplements thereto *pro se*, a less stringent standard of review applies.

As Judge Hollander of this Court has recently noted, ordinarily "a court 'may not modify a term of imprisonment after it has been imposed.'" *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817, at *13 (D. Md. May 6, 2024) (quoting *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024) and 18 U.S.C. § 3582(c)). One exception to that rule is the doctrine of compassionate release, which permits sentence reductions in extraordinary

5

and compelling circumstances. As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now permits a defendant to file a motion for compassionate release in the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The Court may reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons" warrant a sentence reduction, the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and that the factors in 18 U.S.C. § 3553(a) "merit a reduction." 18 U.S.C. § 3582(c)(1)(A); *United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020); *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). As relevant here, the Sentencing Commission's current policy statement, U.S.S.G. § 1B1.13, identifies six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

(1) a serious medical circumstance of the defendant;
(2) a defendant who is at least 65 years old and suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
(3) the death or incapacitation of an immediate family member
(4) the defendant being a victim of abuse while in custody;
(5) other reasons of similar gravity as (1)–(4); and
(6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Finally, the court has "broad discretion" to deny a motion for compassionate release if it determines the § 3553(a) factors do not support a sentence reduction, even if the defendant establishes extraordinary and compelling reasons for release. *See Kibble*, 992 F.3d at 330–32;

6

*see also United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022). Section 3553(a) requires that the court consider the following factors when imposing a sentence: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *United States v. Bryant*, CCB-95-202, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

## ANALYSIS

### I. Administrative Exhaustion Requirements.

Holton has met his administrative exhaustion requirements. To establish that he has exhausted all administrative remedies, Holton provided his written request to the Warden of his institution requesting compassionate release. (ECF Nos. 166 at 3; ECF No. 166-1.) Holton has met his administrative exhaustion requirements, as well over thirty days have elapsed between the time Holton submitted his request to the Warden. 18 U.S.C. § 3582(c)(1)(A). Indeed, the Government concedes as much in its Opposition. (ECF No. 173 at 8.)

### II. Extraordinary and Compelling Reasons.

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 944(t). While the district court holds broad discretion in analyzing

extraordinary and compelling reasons, it must remain consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021); *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir.) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)). As the Fourth Circuit noted, there had previously been "no applicable policy statements to reference;" however, that changed on November 1, 2023. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817, at *13 (D. Md. May 6, 2024).

Prior to the November 1, 2023 amendment, the relevant policy statement codified in U.S.S.G. § 1B1.13 read: "Upon motion of the *Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (2021) (emphasis added). The Fourth Circuit interpreted this language to not include defendant-filed motions. *McCoy*, 981 F.3d at 281 ("When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of the district courts."). Thus, district courts could "consider any extraordinary and compelling reasons for release." *Id.* at 284 (citation omitted).

Congress amended this policy statement to read: "Upon motion of the Director of Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the current policy statement, which became effective November 1, 2023, applies to defendant-filed motions. *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *14; *Davis*, 99 F.4th at 653–54; *United States v. Taylor*, No. ELH-12-0570, 2023 U.S. Dist. LEXIS 222428, at *9–10 (D. Md. Dec. 14,

8

2023). The updated language of § 1B1.13 conflicts with *McCoy*'s conclusion—which was based on the pre-amendment language—that the policy statement does not apply. *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *14–15. The amended version of § 1B1.13 consequently does restrict courts to follow its policy statement. *Id.*

As noted *supra*, U.S.S.G. § 1B1.13(b)(1)–(6) identifies six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is at least 65 years old and suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and
> (6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Of relevance here is § 1B1.13(b)(5). As Judge Bredar of this Court previously explained, § 1B1.13(b)(5) is a "catchall provision" included in the amended Sentencing Guidelines which "maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release." *United States v. Smith*, JKP-12-479, 2024 U.S. Dist. LEXIS 30932, at *4 (D. Md. Feb. 21, 2024). Pointing to the Sentencing Commission's reasoning behind this catchall provision, Judge Bredar notes that this "is a nod to *McCoy*, and other similar precedents, indicating that it is intended to largely maintain the status quo," thereby allowing courts to "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at *4–5 (quoting *McCoy*, 981 F.3d at 284 (emphasis in original)). Also relevant here, rehabilitation alone may not serve as

9

an extraordinary and compelling reason, but a court may consider rehabilitation in combination with other circumstances. U.S.S.G. § 1B1.13(d); 28 U.S.C. § 944(t).

This Court and others have found that, where the length of a defendant's sentence is significantly longer than the national or the relevant Circuit average sentence for similar (or more serious) crimes, such disparity can constitute an extraordinary and compelling reason justifying a sentence reduction consistent with § 1B1.13(b)(5). *See Smith*, 2024 U.S. Dist. LEXIS 30932, at *5–6 (finding extraordinary and compelling reasons existed, in part, because defendant's 300-month sentence stemming from a non-violent drug crime was "excessive and disproportionate" compared with national average sentences for more serious violent crimes); *United States v. Whitehurst*, PJM-11-00567, 2024 U.S. Dist. LEXIS 125645, at *10–11 (D. Md. July 17, 2024) (finding extraordinary and compelling reasons existed, in part, because defendant's 294-month sentence resulting from § 922(g)(1) and drug distribution convictions was excessive compared to national averages for drug trafficking and violent crime sentences); *United States v. Brown*, 715 F. Supp. 3d 1034, 1044–45 (S.D. Ohio 2024) (finding extraordinary and compelling reasons existed, in part, because defendant's 1430-month sentence stemming from, *inter alia*, Hobbs Act robbery and carrying a firearm in relation to a crime of violence, was "almost six times longer than the average federal sentence for murder within the Sixth Circuit").

Here, while Holton's purported medical conditions' effect on his susceptibility to COVID-19 risks do not establish an extraordinary and compelling reason warranting

compassionate release,[2] the Court finds that the disparity in Holton's sentence in comparison with other defendants nationally constitutes an extraordinary and compelling reason justifying a reduction in his sentence, especially considering Holton's admirable rehabilitative efforts since his incarceration.  The national average sentence for those like Holton convicted of a § 922(g) violation and sentenced under the Armed Career Criminal Act ("ACCA") is 203 months.  *QuickFacts 18 U.S.C. § 922(g) Firearms Offenses*, U.S. SENT'G COMM'N, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY23.pdf.   In the instant case, Holton's prior convictions rendered him an armed career criminal under the ACCA, and thus, he was subject to the 15-year (180 month) mandatory minimum sentence.  18 U.S.C. § 924(e)(1).  In imposing Holton's 288-month sentence, the Court factored in the ACCA mandatory minimum sentence (ECF No. 119 at 48), and it considered the fact that Holton attempted (but failed) to shoot a police officer.  (*Id.* at 37.)  But even taking these considerations into account, the Court finds that Holton's 288-month sentence, when compared to the national average sentence for those

---

[2] While the 2023 amendments to U.S.S.G. § 1B1.13, particularly U.S.S.G. § 1B1.13(b)(1)(D), reinforce prior holdings of this Court that a defendant's heightened susceptibility to COVID-19 may constitute an extraordinary and compelling reason for a sentence reduction, *see*, *e.g.*, *Davis*, 99 F.4th at 654, as Judge Hollander of this Court has noted, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v. Hiller*, No. ELH-18-0389, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020) (quoting *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling" circumstance, the defendant must prove that he has a "particularized susceptibility" to COVID-19. *See, e.g., United States v. Petway*, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022). The defendant must also prove that his "risk of contracting COVID-19 is higher in prison than outside of prison." *Davis*, 99 F.4th at 655. Here, Holton represents that he has certain medical conditions—namely, heart disease and hypertension—which render him more susceptible to complications caused by COVID-19.  (ECF No. 160 at 5–6; ECF No. 162 at 3–4.)  But Holton has not proved that these conditions render him particularly susceptible to severe risks caused by COVID-19, nor has he established that there is a higher risk of him contracting COVID-19 in prison than there is outside of prison.  Accordingly, Holton's medical conditions in relation to COVID-19 do not establish an extraordinary and compelling reason warranting compassionate release.

convicted of §-922(g) violations and sentenced under the ACCA (203 months), constitutes a sentencing disparity establishing an extraordinary and compelling reason to reduce Holton's sentence. A sentence within the Sentencing Guidelines and above the relevant 203-month § 922(g) ACCA national average sentence was certainly appropriate given Holton's attempted act of violence, but the 85-month (over 7 years) difference between Holton's sentence and the most relevant national average is nevertheless excessive.

Finally, Holton's record while incarcerated bolster's the Court's finding of an extraordinary and compelling reason justifying a sentence reduction. Holton has demonstrated an unwavering commitment to bettering himself while incarcerated, taking advantage of numerous educational and rehabilitative courses, and consistently holding a job, where he receives positive evaluations. (ECF No. 166 at 9.) During his long imprisonment, Holton has impressively received just a single disciplinary infraction (*id.* at 9–10), which the Government notes "is a point in his favor." (ECF No. 154.)

In summary, the Court finds that the disparity between Holton's sentence and the national sentence average for others charged under § 922(g)(1), in conjunction with Holton's admirable efforts to rehabilitate himself while incarcerated, constitute an extraordinary and compelling reason justifying a reduction in Holton's sentence in accordance with U.S.S.G. § 1B1.13(b)(5).

### III.  Application of 18 U.S.C. § 3553(a).

In *McCoy*, the Fourth Circuit made clear that "not all defendants convicted under § 924(c) should receive new sentences" and that "courts should be empowered to relieve some defendants of those sentences on a case-by-case basis." 981 F.3d at 286–87. Accordingly, a

court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *Id.* at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471, at *4.

On balance, the 18 U.S.C. § 3553(a) factors support a reduction in Holton's sentence. Preliminarily, the Court notes that Holton's criminal history is extensive, and the nature of the crime underlying the instant conviction is serious, especially given that Holton attempted to shoot a police officer. Holton's sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to deter criminal conduct. On the other hand, Holton's evidence of commendable post-sentencing rehabilitation weighs in favor of sentence reduction. *See Pepper v. United States*, 462 U.S. 476, 491 (2011) (holding that "evidence of postsentencing rehabilitation may be plainly relevant to 'the history and characteristics of the defendant'" and "'the need for the sentence imposed'" (quoting 18 U.S.C. § 3553(a))). With the exception of one infraction, not only has Holton's behavior while incarcerated been excellent, but he also has taken steps to better himself by engaging in numerous rehabilitative and educational programs. (ECF No. 166 at 9–10.) And in addition to his rehabilitative efforts, Holton has remained employed consistently while incarcerated—at one point, even holding a managerial position where he trained others—and has received praise for his work efforts. (*Id.*

at 9.) Further, as discussed *supra*, there is an unwarranted disparity between Holton's sentence and sentences imposed upon comparable defendants. Accordingly, the Court finds that, while the relevant § 3553(a) factors do not support Holton's immediate release, they do support a reduction in his sentence.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 25th day of November, 2024, that: Defendant Antonio Holton's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 160) is DENIED with respect to his request for a time served sentence and his request for a reduced supervised release period, but is GRANTED as to a sentence reduction. Specifically, Holton's total sentence will be reduced from 288 months to 240 months of incarceration.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge